UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

|                                           |   |                              |
|-------------------------------------------|---|------------------------------|
|                                           | ) |                              |
|                                           | ) | No. 2:25-cv-49-PPS           |
| IN RE SURPLUS MANAGEMENT SYSTEMS,         | ) | Bkrtcy. Case No. 17-22658-jra |
| LLC                                       | ) |                              |
|                                           | ) |                              |
|                                           | ) |                              |

**OPINION AND ORDER**

Andrew Young, representing himself, appeals the denial of objections he filed to a trustee's motions to sell property in a bankruptcy proceeding involving his solely owned LLC. The trustee and a creditor in that action move to dismiss Young's appeal on the grounds that he seeks to appeal a non-final order and that, in any event, he lacks standing to appeal the bankruptcy court's denial of his objections. Because Young failed to demonstrate he will be pecuniarily affected by the motions directed at his LLC, I find he lacks standing to pursue this appeal.

**Background**

In 2017, Andrew Young and a bevy of his wholly owned companies filed a slew of bankruptcies. First, Surplus Management Systems, LLC ("SMS") filed for Chapter 11 bankruptcy on September 17, 2017. [Bkrtcy. Case No. 17-22658-jra, Doc. 1.] Young is the sole owner of SMS. The next day, Young filed a personal Chapter 11 bankruptcy. [Bkrtcy. Case No. 17-22665-jra, Doc. 1.] Around this same time, three additional entities solely owned by Young filed for Chapter 11 bankruptcy. [*See* Bkrtcy. Case No. 17-22661-jra; Bkrtcy. Case No. 17-22696-jra; Bkrtcy. Case No. 17-22677-jra.] The five cases were later consolidated for joint administration under the case number for Young's

1

bankruptcy, 17-22665. [Bkrtcy. Case No. 17-22658-jra, Doc. 59.]

In March 2024 all of the cases were converted from Chapter 11 bankruptcy cases into Chapter 7 proceedings. [Bkrtcy. Case No. 17-22658-jra, Doc. 66, Doc. 67.] This served to terminate the joint administration of the Young cases, including for the SMS bankruptcy case now before me. The United States Trustee thereafter appointed Lori D. Fisher as Chapter 7 Trustee in the SMS case. [Bkrtcy. Case No. 17-22658-jra, Doc. 68.]

On November 15, 2024, Trustee Fisher filed two motions in the SMS bankruptcy that precipitated this appeal. First, Trustee Fisher filed an "Application to Employ Process Iron and Metal, LLC" to assist in the disposal of scrap metal and other property and the clean-up of SMS-owned sites. [Bkrtcy. Case No. 17-22658-jra, Doc. 112.] Second, Trustee Fisher filed a "Motion to Approve Sale of Scrap Metal and Other Property" seeking approval to sell the scrap metal and other property at SMS-owned sites. [Bkrtcy. Case No. 17-22658-jra, Doc. 114.]

Young, who is not a creditor in the SMS bankruptcy and has not filed any claims therein, filed objections to both motions. [Bkrtcy. Case No. 17-22658-jra, Doc. 125, Doc. 126.] In his objections, Young asserted that he was the sole shareholder of SMS, so his estate is a party in interest to the SMS bankruptcy. [*Id*.] Trustee Fisher and the Lake County Treasurer, a creditor in the SMS case, argued in response that Young lacked standing to challenge Trustee Fisher's motions. [Bkrtcy. Case No. 17-22658-jra, Doc. 157, DE 158.] At a subsequent hearing on the motion, the bankruptcy court overruled Young's objections to Trustee Fisher's motions. [Bkrtcy. Case No. 17-22658-jra, Doc. 156, 157.] The bankruptcy court granted Trustee Fisher's Motion to Employ but

deferred final ruling on the Motion to Approve Sale. [Bkrtcy. Case No. 17-22658-jra, Doc. 165, Doc. 229.] Trustee Fisher later withdrew the Motion to Approve Sale on the record during an April 23, 2025, status hearing. [Bkrtcy. Case No. 17-22658-jra, Doc. 253.]

Thereafter, Young filed a motion for leave to file an interlocutory appeal of the bankruptcy court's denial of his objections in the event that the bankruptcy court's ruling "is to be treated as an interlocutory ruling." [Bkrtcy. Case No. 17-22658-jra, Doc. 178 at 1.] The bankruptcy court held a hearing on that motion but has not yet ruled. [Bkrtcy. Case No. 17-22658-jra, Doc. 228.] Young now appeals the bankruptcy court's decision to overrule his objections to Trustee Fisher's motions. [DE 1.]

## Discussion

In this Court, Trustee Fisher and the Lake County Treasurer seek dismissal of Young's appeal of the bankruptcy court's order overruling his objections to the Motions to Employ and to Approve Sale. [DE 5; DE 9.] Given Trustee Fisher's April 23, 2025, withdrawal of the Motion to Approve Sale, Young's appeal now appears to be moot regarding that Motion but remains live for the Motion to Employ. In her motion to dismiss, Trustee Fisher adopts the same two arguments advanced by the Lake County Treasurer: (1) Young appeals an interlocutory, non-final order so lacks a right of appeal; and (2) Young lacks standing to appeal bankruptcy orders directed at SMS. The Appellees' motions to dismiss and Young's responses overlap on the issues, so I will address them jointly. And because the standing argument carries the day, I need not address the Trustee's and the Treasurer's first argument.

Young, as the appellant, is the party invoking federal jurisdiction, so he bears "the burden of demonstrating standing." *In re GT Automation Grp., Inc.*, 828 F.3d 602, 605 (7th Cir. 2016). "The test for standing is a familiar one: '[a] plaintiff has standing only if he can allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Pavlock v. Holcomb*, 35 F.4th 581, 588 (7th Cir. 2022) (quoting *California v. Texas*, 593 U.S. 659, 668–69 (2021)). The Seventh Circuit has characterized bankruptcy standing as "a form of prudential standing which is more confined than Article III standing." *In re Ray*, 597 F.3d 871, 875 (7th Cir. 2010); *In re Carbide Cutoff, Inc.*, 703 F.2d 259, 264 (7th Cir. 1983).

"Only a 'person aggrieved' has standing to appeal an order of a bankruptcy court." *In re Ray*, 597 F.3d at 874 (quoting *In re Schultz Mfg. & Fabricating Co.*, 956 F.2d 686, 690 (7th Cir. 1992)). Young qualifies as a "person aggrieved" only if "(1) he attended and objected at a bankruptcy court proceeding to the proposed order, and (2) he was affected pecuniarily by the order." *Young v. Lake Cty. Treasurer*, No. 24-1415, 2024 WL 4864447, at *1 (7th Cir. Nov. 21, 2024) (internal citations omitted). To be "affected pecuniarily" means a person can "demonstrate that the order diminishes the person's property, increases the person's burdens, or impairs the person's rights." *In re Cult Awareness Network, Inc.*, 151 F.3d 605, 608 (7th Cir. 1998) (citation omitted). This "narrower" standard for bankruptcy standing exists to promote judicial economy and efficiency in the administration of bankruptcies. *In re Ray*, 597 F.3d at 874.

This is not the first time Young has appealed, in his individual capacity, a bankruptcy court order directed at one of his solely owned entities. In 2023, in this

same collection of bankruptcy proceedings, I granted the Lake County Treasurer's motion to dismiss for lack of standing Young's appeal of the bankruptcy court order converting from Chapter 11 to Chapter 7 the bankruptcy proceeding of a different Young-owned entity: D.A.Y. Investments, LLC. *See Young v. Lake Cty. Treasurer*, Cause No. 2:23-CV-324-PPS, 2023 WL 8370202 (N.D. Ind. Dec. 4, 2023). Even though Young and D.A.Y. shared the same counsel, Young the individual did not join D.A.Y.'s objection to the conversion order in the bankruptcy court. *Id*. at *3. I therefore held that, given the "clear distinction between a natural person who owns a membership interest in a LLC and the underlying entity", Young failed to satisfy the appear and object prerequisite for standing to appeal. *Id*. at *2.

The Seventh Circuit declined to rule on the "appear-and-object" prerequisite and instead affirmed on the grounds that the bankruptcy order did not pecuniarily affect Young. *Young*, 2024 WL 4864447 at *2. The Seventh Circuit rejected Young's argument that the order directly affected him because, as the sole owner of D.A.Y., he lost rights to the company's assets. *Id*. The Seventh Circuit similarly relied on Indiana law concerning LLCs, which does not hold members personally liable for the debts, obligations, or liabilities of the LLC. *Id*. Finally, the Seventh Circuit rejected two other alleged pecuniary interests deciding that the conversion order did not divest Young of his membership interest in D.A.Y. (it only decreased that interest's value) and that his claim he might not later receive income from D.A.Y. or its assets was conjectural and not imminent. *Id*. This last holding is of particular note to Young's current appeal.

Young once again attempts to appeal an order entered against an LLC, but he

tells me this time things are different. Indeed, there are differences between Young's D.A.Y. case and the present SMS case. Here, Young did appear and object to the Motions to Employ and to Approve Sale in SMS' bankruptcy. [Bkrtcy. Case No. 17-22658-jra, Doc. 125, Doc. 126.] Young argues that the Seventh Circuit's ruling in the D.A.Y. case "would have been different if Young had appeared and objected in the Bankruptcy Court." [DE 13 at 4.] But Young misconstrues the Seventh Circuit's ruling in the D.A.Y. case when he asserts that the Seventh Circuit "determined that Young did not meet the appearance and objection standard." [*Id*. at 3.] In the D.A.Y. case, the Seventh Circuit commented that whether Young met the appear-and-object requirement was "debatable" but concluded "[w]e need not reassess the appear-and-object requirement or decide whether Young satisfied it because, even if he did, Young lacks standing to appeal for the reason that the order did not pecuniarily affect him." *Young*, 2024 WL 4864447 at *2. Contrary to Young's assertions, his appearance and objection does not resolve the question of standing. He must also demonstrate a pecuniary interest.

Young asserts several theories for how he is pecuniarily affected by the Motions to Employ and to Approve Sale. First, Young claims the Trustee's sale of scrap from SMS sites would "cause Young to lose millions of dollars of value in the inventory and other assets." [DE 13 at 5.] Second, Young argues the inventory the Trustee seeks to scrap belongs to another debtor, Andy's Truck and Equipment Co. [*Id*.] Young argues he also has a pecuniary interest in Andy's Truck's assets, so scraping Andy's Truck's assets will also affect Young. I note here that the Trustee for Andy's Truck bankruptcy

6

also objected to the Trustee's Motion to Employ (but not the Motion to Approve Sale). [Bkrtcy. Case No. 17-22658-jra, Doc. 124.] The bankruptcy court overruled this motion during the same January 15, 2025, hearing, and the Trustee for Andy's Truck has not appealed that decision. [Bkrtcy. Case No. 17-22658-jra, Doc. 165.]

These theories are united in their underlying reasoning that selling SMS' scrap will "reduce the surplus available to flow into Young's personal bankruptcy estate, and then to Young the individual." [DE 13 at 6.] Young asserts that courts "routinely grant standing to [C]hapter 7 debtors to object to claims when there is a surplus or a reasonable possibility of surplus in the estate." [*Id*. at 9.] The Seventh Circuit indeed recognizes that "[i]f the debtor can show a reasonable possibility of a surplus after satisfying all debts, then the debtor has shown a pecuniary interest and has standing to object to a bankruptcy order." *In re Cult Awareness Network, Inc.*, 151 F.3d at 608. Young asserts that this "surplus rule" gives him a pecuniary interest in the Trustee's motions in the SMS bankruptcy.

The bankruptcy court considered and rejected Young's arguments concerning pecuniary interest. During the January 2025 hearing, Judge Ahler concluded that Young failed to meet his burden of proof concerning evidence of an alleged surplus that would eventually be paid out to him personally. [DE 6-1 at 38.] Moreover, the bankruptcy court rejected Young's standing to contest the motions because he was a separate and distinct entity from SMS. [*Id*. at 39.] The bankruptcy court concluded that the "surplus" exception did not apply because Young was not a debtor in the SMS bankruptcy. [*Id*.] Finally, the bankruptcy court noted that any surplus in the SMS

7

bankruptcy would become the property of the estate for Young's personal bankruptcy case, and the separate trustee in that proceeding filed no objections to the motions in the SMS case. [*Id.*]

It bears repeating that Young is neither the debtor nor a creditor in the SMS bankruptcy proceeding. This presents two problems for Young's standing. As the Seventh Circuit noted in Young's previous challenge in the D.A.Y. bankruptcy proceeding, "[u]nder Indiana law, to benefit from the corporate form, a limited liability company like [SMS] is distinct from its members", "Young is not personally liable for the debts, obligations, or liabilities" of SMS, and Young "directly owns none of [SMS'] assets." *Young*, 2024 WL 4864447 at *2 (internal quotations and citations omitted). As with D.A.Y., the mere fact that Young is the sole owner of SMS does not grant him a pecuniary interest. I do not strive to overextend the Seventh Circuit's limited decision in the prior Young case, but this ruling squarely forecloses Young's claim that any distribution of surplus assets is "effectively a distribution to the debtor's equity holders." [DE 13 at 9.]

Moreover, the surplus exception asserted by Young applies to debtors, and Young is not a debtor in the SMS bankruptcy. SMS is the debtor. In the Seventh Circuit case cited by Young, the debtor of the bankruptcy proceeding sought to object to the trustee's sale of its trade name. *In re Cult Awareness Network, Inc.*, 151 F.3d at 607. This is an entirely different situation than Young's appeal of an order entered against a separate debtor in that debtor's (now standalone) bankruptcy proceeding. *See also In re C.P. Hall Co.*, 750 F.3d 659 (7th Cir. 2014) (holding that a non-debtor, non-creditor

8

excess insurer of the debtor lacked a pecuniary interest to intervene and object to settlement between debtor and debtor's other insurer).

What's more, even if Young could assert the surplus exception as a non-debtor, I agree with the bankruptcy court's conclusion that Young failed to meet his burden to establish a "reasonable possibility of a surplus" in the Trustee's proposed sale of SMS' inventory. *See In re Cult Awareness Network, Inc.*, 151 F.3d at 608. Part of the problem for Young is the multiple hurdles that must be cleared to make such an assertion. Young would have to demonstrate a reasonable possibility of a surplus in the SMS bankruptcy that would flow into his personal bankruptcy estate, resolve all claims in that bankruptcy, and eventually flow as a surplus to him. At the January 2025 hearing, Young failed to present any concrete, non-conjectural evidence of a surplus at the first step in that chain—the SMS bankruptcy. For example, Young made no comparison of SMS' debts and resultant assets from the proposed sales.

On appeal, Young tries to add color to his assertion of a surplus by claiming SMS has cash on hand and other pending real estate sales that will result in $500,000 in near term assets to satisfy SMS' debts. [DE 13 at 1–2; DE 14 at 2.] Young's blank assertions, unsupported by any designated evidence, that there are "facts that can be backed up with figures", [DE 13 at 6], is still pure conjecture. *See In re Stinnett*, 465 F.3d 309, 315-16 (7th Cir. 2006) (comparing the debtor's assets to his liabilities to conclude he was unlikely to "emerg[e] from Chapter 7 with any estate property.").

In sum, Young's present appeal—just like his prior one—proves the point of the standing requirement's pecuniary interest rule: to "insure that bankruptcy proceedings

9

are not unreasonably delayed by protracted litigation by allowing only those persons whose interests are directly affected by a bankruptcy order to appeal." *In re Cult Awareness Network, Inc.*, 151 F.3d at 609 (quoting *In re Andreuccetti*, 975 F.2d 413, 416–17 (7th Cir. 1992)). Therefore, because Young has not been personally aggrieved by the bankruptcy court's order, he lacks the standing necessary to appeal it. And in light of that finding, I decline to reach the merits of Appellees' alternative argument that Young is appealing a non-final, interlocutory order.

## Conclusion

For the reasons explained in this opinion and order, Appellees the Lake County Treasurer's [DE 5] and Chapter 7 Trustee Lori D. Fisher's [DE 9] Motions to Dismiss Bankruptcy Appeal for Lack of Jurisdiction are **GRANTED**.

**SO ORDERED.**

ENTERED: May 29, 2025.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT